## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KIMBERLY ALDRIDGE,
    *Plaintiff,*

    v.

NED LAMONT,
    *Defendant.*

No: 3:20-cv-00924 (KAD)

December 30, 2020

## MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND (ECF NOS. 15, 22)

Kari A. Dooley, United States District Judge:

Plaintiff Kimberly Aldridge ("Aldridge" or the "Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Governor Ned Lamont ("Governor Lamont" or the "Governor") alleging that Executive Orders 7G, 7X, and 7DDD, issued by the Governor to address the COVID-19 pandemic, violate the Plaintiff's right to just compensation, due process, and equal protection as guaranteed by the United States Constitution. Governor Lamont moved to dismiss Aldridge's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on various grounds, including that this Court lacks subject matter jurisdiction over the Plaintiff's claims. (ECF No. 15.) Aldridge filed an opposition to the motion to dismiss (ECF No. 18) and additionally seeks leave to file an amended or supplemental complaint (ECF No. 22), which the Governor opposes. (ECF No. 23.) Also pending before the Court is the Governor's motion to stay discovery and the parties' Rule 26 obligations (ECF No. 17), which Aldridge opposes. (ECF No. 19.) For the reasons that follow, the motion to dismiss is GRANTED and the motion for leave to amend is DENIED. The Governor's motion to stay discovery is accordingly DENIED as moot.

1

**Standard of Review**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (*per curiam*) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Mercer v. Schriro*, 337 F. Supp. 3d 109, 122 (D. Conn. 2018) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [she] has standing to sue." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quotation marks and alterations omitted). In resolving a motion to dismiss on this basis, the Court may also consider "evidence outside the complaint." *Id.*

On a motion to dismiss under Rule 12(b)(6), the Court must also accept the complaint's factual allegations as true and draw inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). The complaint "must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted).

Although a *pro se* complaint "must be construed liberally to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quotation marks and brackets omitted).  So too must a *pro se* litigant be able "to allege facts demonstrating that her claims arise under this Court's . . . jurisdiction." *Gray v. Internal Affairs Bureau*, 292 F. Supp. 2d 475, 477 (S.D.N.Y. 2003).  Absent such a showing the "complaint must be dismissed." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

Finally, Fed. R. Civ. P. 15(a)(2) instructs that leave to amend should be freely given, though the Court may deny it for good cause, including, *inter alia*, "when amendment would be futile." *Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 252 (D. Conn. 2016) (quotation marks omitted).[1]  Even affording *pro se* plaintiffs special consideration in construing their pleadings, the Court should deny leave to amend as futile where "the subject matter jurisdiction deficiencies . . . are substantive and cannot be cured." *Pudlin v. Office for (Not of) Civil Rights of the United States Dep't of Educ.*, 186 F. Supp. 3d 288, 295 (S.D.N.Y. 2016).

**Allegations**

Aldridge's claims  arise from her frustrated efforts to evict a difficult tenant, who rented property from Aldridge in West Haven, Connecticut.  According to the allegations in her complaint, Aldridge first notified her tenant on December 27, 2019 that the tenant's lease would not be renewed due to late payments and lease violations.  (Compl. at 6, ECF No. 1.[2])  Aldridge filed for eviction on March 2, 2020, after her tenant refused to move out of the premises by

---

[1] Fed. R. Civ. P. 15(d) "permit[s] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," which the Court may allow "even though the original pleading is defective in stating a claim or defense."  A motion to file a supplemental pleading may be denied in the Court's exercise of discretion, however, including on grounds of futility.  *See Nat'l Credit Union Admin. Bd. v. HSBC Bank US, Nat'l Ass'n*, 331 F.R.D. 63, 69 (S.D.N.Y. 2019).  The Court's futility analysis is therefore the same whether the Plaintiff's filing is construed as a motion to amend under Rule 15(a) or a motion to file a supplemental pleading under Rule 15(d).

[2] The exhibits to the complaint do not include page numbers and so the numbers referred to herein are those that correspond to the docket entry heading at the top of each page.

February 29, 2020 as Aldridge had requested.  (*Id.*; *see also Aldridge, Kimberly v. Brooks, Shayna*,
No. NHH-CV20-5004595-S (Conn. Super. Ct. Housing Session filed Mar. 5, 2020).)  Aldridge
alleges that her tenant owes $4,520 as of July 1, 2020 for unpaid rent since January and has been
a serious nuisance, including by intentionally destroying Aldridge's property.  (Compl. at 6–7.)
The complaint cites numerous examples of the tenant's destruction or neglect—including a kitchen
fire, standing water in the living room hallway, a broken fence and hand railing, and an overgrown
and ill-maintained yard.  (*Id.*)  Aldridge alleges that on May 22, 2020 she contacted the police in
order to gain access to her property, where she discovered approximately $13,000 to $18,000 in
damages.  (*Id.* at 6.)

Aldridge further alleges that her tenant "has made it clear in emails that she is protected
under Executive Order 7X."  (*Id.* at 7.)  Executive Order ("EO") 7X was issued by the Governor
on April 10, 2020 and implements certain "Protections for Residential Renters Impacted by
COVID-19," including prohibiting landlords from delivering a notice to quit or serving or
returning a summary process action before July 1, 2020, "except for serious nuisance as defined
in section 47a-15 of the Connecticut General Statutes."  (*Id.* at 23.[3])  EO 7X further establishes,
under certain conditions, a 60-day grace period for rent due in April and May 2020 and authorizes
the application of a security deposit to rent due in April, May, or June 2020 for tenants affected by
the COVID-19 pandemic.  (*See id.* at 23–24.)  It also provides that "[e]xcept as expressly provided
herein, nothing in this order shall relieve a tenant of liability for unpaid rent or of the obligation to
comply with other terms of a rental agreement or statutory obligations pursuant to Connecticut
law."  (*Id.* at 24.)  Aldridge alleges that by issuing EO 7X, "Governor Lamont has allowed this

---

[3] *See also* Executive Order No. 7X, *Protection of Public Health and Safety During Covid-19 Pandemic and Response – Renter Protections, Extended Class Cancellation and Other Safety Measures, Educator Certification, Food Trucks for Truckers*, available at https://portal.ct.gov/Office-of-the-Governor/Governors-Actions/Executive-Orders/Governor-Lamonts-Executive-Orders? (last accessed Dec. 30, 2020).

tenant to continue to live rent free and continue her wrath of desecration on my property." (*Id.* at 7.) She claims that the Governor has deprived her of her "property without due process, just compensation and equal protection" and has thus "stripped [her] of [her] rights under the Fifth and Fourteenth Amendment[s]." (*Id.*)

Aldridge also challenges EO 7DDD, which was issued on June 29, 2020 and, *inter alia*, extends the ban on landlords delivering a notice to quit or serving or returning a summary process action until August 22, 2020, "except for nonpayment of rent due on or prior to February 29, 2020 or for serious nuisance as defined" by statute. (*Id.* at 28–29.[4]) She further challenges EO 7G, which was issued on March 19, 2020 and suspended, *inter alia*, "time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings" and "all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions." (*See id.* at 16–17.[5]) Aldridge alleges that the court date for her eviction case that had been scheduled for April 14, 2020 was cancelled on March 27, 2020 and still had not been rescheduled as of the filing of her complaint. (*Id.* at 7.) She accordingly asserts that she has no means of regaining possession of her property.

Based upon the foregoing, Aldridge seeks damages of $300,000 to cover her lost rental income, property damage, and court fees, and to redress the alleged violations of her civil rights. She also requests that her "rights to [her] property to evict to regain possession and collect just

---

[4] *See also* Executive Order No. 7DDD, *Protection of Public Health and Safety During Covid-19 Pandemic and Response – Extension of Eviction Moratorium and Administrative Deadlines*, available at https://portal.ct.gov/Office-of-the-Governor/Governors-Actions/Executive-Orders/Governor-Lamonts-Executive-Orders? (last accessed Dec. 30, 2020).

[5] *See also* Executive Order No. 7G, *Protection of Public Health and Safety During Covid-19 Pandemic and Response – Presidential Primary Postponement and Additional Public Health Measures*, available at https://portal.ct.gov/Office-of-the-Governor/Governors-Actions/Executive-Orders/Governor-Lamonts-Executive-Orders? (last accessed Dec. 30, 2020).

compensation be restored" and her "eviction case be heard as an urgent matter to regain possession of [her] property based on lapse of time, non-payment and serious nuisance." (*Id*. at 8.)  If these rights cannot be restored, Aldridge asserts that she is no longer the owner of the property in West Haven and accordingly asks that her mortgage liability be assumed and fully paid by Governor Lamont and the State of Connecticut.

## Discussion

### The Eleventh Amendment Bars Aldridge's Claims for Money Damages

The Governor asserts that Aldridge's Fifth Amendment takings claim incorporated via the Fourteenth Amendment, and her other Fourteenth Amendment claims, to the extent that she seeks monetary damages, are barred by the Eleventh Amendment.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "The Eleventh Amendment has been interpreted as also barring suits in federal court against a state brought by that state's own citizens." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 151 (2d Cir. 2013).  "While Congress may abrogate the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal citations omitted).  It is well established that "Congress did not abrogate [the State's] Eleventh Amendment immunity by enacting Section 1983." *Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (citing *Quern v. Jordan*, 440 U.S. 332, 343–45 (1979)).

Nor has Connecticut waived its Eleventh Amendment immunity with respect to claims brought pursuant to Section 1983. *See Turner v. Boyle*, 116 F. Supp. 3d 58, 73–74 (D. Conn. 2015).

Eleventh Amendment immunity extends not only to the State itself but to state officials. *See, e.g.*, *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) ("An action against a state official in his official capacity is deemed an action against the state itself, which possesses sovereign immunity under the Eleventh Amendment.") (internal citation omitted). "For suits against individuals in their official capacities, the applicability of the Eleventh Amendment bar depends on the form of relief sought. Money damages cannot be recovered from state officers sued in their official capacities." *Lee v. Dep't of Children & Families*, 939 F. Supp. 2d 160, 165–66 (D. Conn. 2013); *see also Libertarian Party*, 970 F.3d at 123 ("[A] state official sued in his official capacity is entitled to invoke Eleventh Amendment immunity from a claim for damages."). "Likewise, 'judgments against state officers declaring that they violated federal law in the past' are not permitted.'" *Lee*, 939 F. Supp. 2d at 166 (quoting *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993)).

Accordingly, any claims for which Aldridge seeks money damages against Governor Lamont to redress her alleged constitutional violations pursuant to Section 1983, or a declaration that any of the challenged Executive Orders violated federal law in the past, are dismissed. *See id.* at 165–66; *see also, e.g.*, *Aron*, 48 F. Supp. 3d at 367 (dismissing "all claims for monetary damages against Governor Cuomo" due to Eleventh Amendment immunity); *Rzayeva v. United States*, 492 F. Supp. 2d 60, 73 (D. Conn. 2007) (holding that claims for damages against former Governor Rell, among other state officials, were barred by the Eleventh Amendment).[6]  And to the extent

---

[6] "Whether Eleventh Amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or [the Second Circuit]." *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 51 n.1 (2d Cir. June 9, 2020) (summary order), *cert. docketed*, No. 20-654 (U.S. Nov. 12, 2020) (quoting *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013));

that Aldridge seeks to amend her claims to recover punitive damages, any such amendment would be futile, as "a claim for damages, including . . . punitive damages, is barred by the Eleventh Amendment." *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 91 (N.D.N.Y. 2013); *see also, e.g.*, *Bohn v. Cook*, No. 3:19-CV-1144 (MPS), 2019 WL 5298152, at *3 (D. Conn. Oct. 18, 2019) (dismissing claims for compensatory and punitive damages against state employees in their official capacities as precluded by the Eleventh Amendment). The same conclusion holds with respect to Aldridge's request that her mortgage liability and home ownership be transferred to the State insofar as this is a demand for payment of "an accrued liability."[7] *See New York City Health & Hosps. Corp. v. Perales*, 50 F.3d 129, 135 (2d Cir. 1995) ("To the extent that a suit against a state sought to extract money for an accrued liability, as distinct from a suit seeking the expenditure of state funds for future compliance with a grant of prospective relief, . . . the Eleventh Amendment barred suit against a state.") (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).[8]

---

*but see Oneida Indian Nation v. Phillips*, 981 F.3d 157, 177 (2d Cir. 2020) (Menashi, *J.*, concurring) (asserting that "[o]ur court has repeatedly recognized that state sovereign immunity limits our subject-matter jurisdiction" and citing cases). The Court need not resolve this issue because the Governor has demonstrated that the Eleventh Amendment bars Aldridge's claims whether this assertion is viewed as an affirmative defense or a challenge to subject matter jurisdiction. *See Woods*, 466 F.3d at 239 (holding that state agency bears the burden of proving it is an arm of the State for purposes of the Eleventh Amendment).

[7] In this vein, Aldridge appears to seek this particular form of relief only if her property rights cannot be restored. (*See* Compl. at 8 ("If my rights to my property to evict to regain possession or collect just compensation can't be restored subsequently I am no longer the homeowner . . . Therefore, I'm requesting the mortgage liability . . . be paid in full and ownership transferred to Governor Ned Lamont and the State of CT").) As discussed *infra*, the tenant has vacated the premises, which renders this prayer for relief moot.

[8] Whether the Eleventh Amendment bars a Takings Clause claim is a question the Second Circuit has not squarely addressed. *See, e.g.*, *Cmty. Hous. Improvement Program v. City of New York*, No. 19-CV-4087 (EK) (RLM), 2020 WL 5819900, at *3 (E.D.N.Y. Sept. 30, 2020) (noting that "neither the Supreme Court nor the Second Circuit has decisively resolved the conflict" between the Eleventh Amendment and the Takings Clause, but the majority of "cases hold that sovereign immunity trumps the Takings Clause — at least where, . . . the state provides a remedy of its own for an alleged violation"); *5465 Route 212, LLC v. New York State Dep't of Transportation*, No. 1:19-CV-01510 (BKS) (DJS), 2020 WL 6888052, at *5–6 (N.D.N.Y. Nov. 24, 2020) (noting same conflict and declining to hold "absent any persuasive authority" that the Takings Clause abrogates States' Eleventh Amendment immunity). As these cases have noted, the Second Circuit also recently affirmed a district court's dismissal of a Section 1983 suit which included a Takings Clause claim on the grounds of sovereign immunity without analysis. *See Morabito v. New York*, 803 F. App'x 463, 465 (2d Cir. Feb. 25, 2020), *amended* (Feb. 27, 2020), *cert. denied*, 141 S. Ct. 244 (2020), *reh'g*

However the *Ex parte Young* exception to Eleventh Amendment immunity permits a plaintiff to file suit against a state official to vindicate "ongoing violations of federal law." *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908))). "A plaintiff may invoke this exception 'provided that [her] complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.'" *Id.* (quoting *In re Deposit Ins. Agency*, 482 F.3d at 618). Here, Aldridge does allege that the Governor's challenged Executive Orders constitute ongoing violations of federal law. And her request that her eviction case be heard in the Superior Court in order to facilitate the repossession of her property could be construed as a request for prospective, *i.e.*, forward-looking, relief. Thus, these claims would not be barred by the Eleventh Amendment. However, as discussed below, recent activity in Aldridge's state eviction proceedings has rendered moot any claims in this vein.[9]

**Aldridge's Remaining Claims Are Moot**

"Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quotation marks omitted). "This limitation is 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "A case becomes moot when it no longer satisfies the 'case-or-controversy' requirement of Article III[.] . . . In order to satisfy this requirement, the [plaintiff] must,

---

*denied*, 2020 WL 6829157 (U.S. Nov. 23, 2020). This Court is therefore reluctant to find an abrogation of the State's Eleventh Amendment immunity in the absence of controlling or persuasive authority on the issue—particularly where, as here, the State of Connecticut provides its own remedy for an alleged unlawful taking. *See* Conn. Const. art. I, § 11 ("The property of no person shall be taken for public use, without just compensation therefor.")

[9] The Governor also argues that the *Ex parte Young* doctrine does not apply to Takings Clause claims, an issue the Court need not reach based upon its conclusion that all of the Plaintiff's claims for injunctive relief are moot, as discussed, *infra*.

at all stages of the litigation, have suffered, or be threatened with, an actual injury which is likely to be redressed by a favorable judicial decision." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 51 (2d Cir. 2004).

Here, certain developments following the filing of this action have rendered Aldridge's claims for prospective relief as they relate to her state eviction proceedings moot. First, Aldridge withdrew the complaint in her initial eviction case on November 5, 2020 and filed a second eviction proceeding against her tenant on November 23, 2020. (*See* Def's. Nov. 25, 2020 Notice of State Court Activity, ECF No. 27; *see also Aldridge, Kimberly v. Brooks, Shauna*, No. NHH-CV20-5004714-S (Conn. Super. Ct. Housing Session filed Nov. 23, 2020).)[10] Next, Aldridge withdrew the second eviction action on December 10, 2020, after Aldridge's tenant vacated the premises and relinquished her keys and any claim for possession or occupancy of the dwelling. (*See* Def's. Dec. 22, 2020 Notice of State Court Activity, ECF No. 29; *see also Aldridge, Kimberly v. Brooks, Shauna*, No. NHH-CV20-5004714-S, Entry Nos. 104.00, 105.00 (Conn. Super. Ct. Housing Session Dec. 10, 2020).) Because there is no longer an eviction action pending against Aldridge's tenant and the tenant has vacated the premises, thereby returning the property to Aldridge, Aldridge's demand that her eviction case be heard to restore her property rights is now moot.[11]

---

[10] As noted previously, on a motion to dismiss for lack of subject matter jurisdiction, the Court can look to material outside of the Complaint, *see, e.g., Cortland Street*, 790 F.3d at 417, and the public state court docket is subject to judicial notice, *see, e.g., Nino v. Countrywide Home Loans, Inc.*, No. 3:18-CV-2086 (JCH), 2019 WL 1320282, at *4 n.5 (D. Conn. Mar. 22, 2019).

[11] As the Governor points out in his motion to dismiss, even if Aldridge's claims were not rendered moot by the withdrawal of her eviction action, her allegations raise serious doubts as to whether she has standing to sue the Governor. Aldridge's alleged injury—*i.e.*, her inability to evict her tenant—does not appear to be fairly traceable to the challenged Executive Orders, because the Orders did not themselves control the timing or status of her particular eviction proceeding. Further, Aldridge sued Governor Lamont—a state official who does not exercise control over the manner with which the Superior Court schedules or prioritizes its docket. *Cf. HealthNow New York Inc. v. New York*, 448 F. App'x 79, 81 (2d Cir. 2011) (summary order) (affirming dismissal of suit challenging constitutionality of state law where "[a]lthough the Attorney General concedes [plaintiff has] a legitimate injury-in-fact for purposes of standing, [plaintiff] cannot demonstrate that this injury is *caused* by any action on the part of the Attorney General,

On December 23, 2020, Aldridge filed a response to the Governor's notice of these recent events in which she asserts that "[e]ven though the tenant finally left my home on 12/6/20, I still haven't been paid rent for 8 full months o[f] rent, home has been seriously damaged, and my home has loss significant value due to the property damages discovered after the tenant vacated the home."  (Pl.'s Resp. at 1, ECF No. 30.)  Aldridge further represents that she is without funds to repair the home and has suffered considerable financial hardship due to the Governor's Executive Orders.  (*Id.*)  She reiterates her belief that the Governor's Orders have violated her constitutional rights and requests "payment of loss rental income, property damages, court fees, loss of property value, and punitive damages for a total amount of $300,000 for deprivation of my rights to my property without due process, just compensation and equal protection[.]"  (*Id*. at 2.)

As discussed above, however, these claims against the Governor for monetary damages are barred by the Eleventh Amendment.  *See Libertarian Party*, 970 F.3d at 122–23; *Lee*, 939 F. Supp. 2d at 165–66.  As there is no prospective relief that can be afforded Aldridge, her claims not otherwise barred by the Eleventh Amendment are now moot and are dismissed.[12]

---

the only party [plaintiff] is suing"); *Stevens v. Malloy*, No. 3:15-CV-934 (JCH), 2016 WL 3198203, at *9 (D. Conn. June 7, 2016) (finding that plaintiff's alleged deprivation of counsel in his child custody case was not "'fairly traceable' to the actions of Governor Malloy and Chief Justice Rogers" so as to support standing to sue these individuals); *Lynch v. Malloy*, No. 3:13-CV-01646 (JAM), 2015 WL 3408795, at *5 n.4 (D. Conn. May 27, 2015) (noting redressability problems with suit against former Governor Malloy challenging Connecticut's alimony scheme because "[a]s the head of the executive branch, he has no power to order the legislature to modify the laws or to order the family court system to promulgate new guidelines" but dismissing due to plaintiffs' failure to show that they were likely to suffer concrete harm).

[12] In her opposition to the motion to dismiss, Aldridge asserts that this "Court has subject matter jurisdiction because diversity jurisdiction and federal question jurisdiction applies in my case."  (Pl.'s Opp. at 2, ECF No. 18.)  "Although the presence of federal question jurisdiction confers jurisdiction to entertain a plaintiff's claim, courts must also independently evaluate whether the particular plaintiff has standing to bring such a claim."  *Cole v. Zucker*, No. 1:17-CV-251 (FJS) (CFH), 2019 WL 974820, at *4 (N.D.N.Y. Feb. 28, 2019).  "In other words, notwithstanding the presence of federal question jurisdiction, a court may still be deprived of subject matter jurisdiction over an action if the plaintiff cannot satisfy Article III standing requirements."  *Id*.  The same is true with respect to diversity jurisdiction.  *See, e.g*., *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 n.2 (2d Cir. 2019) (explaining that Article III standing and diversity jurisdiction present "two threshold jurisdictional questions," either of which can serve "as grounds for dismissal.").  Thus, the fact that this Court might otherwise exercise federal question or diversity jurisdiction over an action does not save that action from dismissal where, as here, Aldridge fails to present a live case or controversy consistent with Article III.

**Motion for Leave to Amend**

As noted previously, Aldridge has moved for leave to file an amended or supplemental complaint.  In it, she updates her allegations to include that "[as] of October 1, 2020, [her] tenant owes $9,440, for unpaid rent which doesn't include interest and fees."  (Proposed Am. Compl. at 2, ECF No. 22-1.)  She also alleges that she contacted the state court to request that her pending eviction case be rescheduled and was "told by the housing clerks on several occasions that my case is still pending until further notice due to the Governor's Executive Orders 7G, 7X, 7DDD and 7OOO."  (*Id*.)  She further alleges that she "contacted the Governor's Office several times and sent several emails to Governor Ned Lamont from March 2020 – June 2020 for assistance and support in this matter" but did not receive a response.  (*Id*.)  In addition to the previously challenged Executive Orders, the proposed amended complaint also cites Executive Orders 7OOO and 9E.[13] (*Id*. at 4.)  Aldridge further alleges that due to the alleged deprivations of her constitutional rights, she is "being forced to sell [her] property to avoid a foreseeable foreclosure."  (*Id*.)

While the Court is sympathetic to these allegations and with the difficult situation that Aldridge has described, the proposed amendments do not present any new facts or theories of liability that would alter the Court's conclusion that her claims are barred by the Eleventh Amendment.  Indeed, as the Governor observes in his opposition to the motion for leave to amend, the proposed amended complaint eliminates Aldridge's request for injunctive relief and seeks only money damages. The claims in the proposed amended complaint would therefore be barred in their entirety by the Eleventh Amendment and the motion to amend must be denied as futile.  *See, e.g.*,

---

[13] These Executive Orders extended the prohibition on service of a notice to quit or a summary process action through October 1, 2020, and January 1, 2021, respectively.  *See* Executive Order No. 7OOO, *Protection of Public Health and Safety During Covid-19 Pandemic – Extension of Eviction Moratorium and Outdoor Dining Expansion, Resumption of Requirements for Defaults and Nonsuits in Civil and Family Matters*; Executive Order No. 9E, *Protection of Public Health and Safety During Covid-19 Pandemic – Extension of Eviction Moratorium, Club Liquor Permits, and Effective Date of Insurance Data Security Law*, available at https://portal.ct.gov/Office-of-the-Governor/Governors-Actions/Executive-Orders/Governor-Lamonts-Executive-Orders? (last accessed Dec. 30, 2020).

*Pudlin*, 186 F. Supp. 3d at 295 (leave to amend should be denied as futile where "the subject matter jurisdiction deficiencies . . . are substantive and cannot be cured.").

**Conclusion**

For the foregoing reasons, the Defendant's motion to dismiss is granted and the Plaintiff's motion for leave to file an amended or supplemental complaint is denied. The motion to stay discovery is denied as moot. The Clerk of Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of December 2020.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE